———————

## SUPREME COURT.

JACOB GRANTMAN, by John Grantman, his Guardian agt. GEORGE THRALL.

A *guardian* for an *infant plaintiff* is not bound under the Code, to give *security for costs*. The provision of the Revised Statutes requiring the "*next friend*" of an infant plaintiff to give security for costs, does not apply to a *guardian*. (J. C. SMITH, J. *dissenting*.)

*Rochester General Term, March,* 1865.

*Before* JOHNSON, P. J., J. C. SMITH *and* E. D. SMITH, *Justices.*

APPEAL from an order denying motion to compel the guardian to file security for costs.

MATHER & MACOMBER, *for appellant, defendant.*

I. The statute provides that the next friend may be compelled to file security for costs. (2 *R. S.* 620; 3 *Id.* 5*th ed. p.* 910, *part* 3, *chap.* 10, *title* 2, § 1.)

II. The Code has not affected or changed this title of the statute. (*Gardner* agt. *Kelley,* 2 *Sand. S. C.* 632; *Hulburt* agt. *Newell,* 4 *How.* 95; *Hill* agt. *Thacter,* 3 *Id.* 407; *Butler* agt. *Wood,* 10 *Id.* 313; *Hulburt* agt. *Young,* 13 *Id.* 413, *Monroe G. T.*; *Cadwell* agt. *Manning,* 24 *Id.* 38; *Thomas* agt. *Thomas,* 18 *Barb.* 150; *Blanchard* agt. *Nessle,* 6 *Hill,* 256; *Washburne* agt. *Langley,* 16 *Abb.* 259; *Voorhies' Code,* § 60, *p.* 423; 4 *Abb. Dig. p.* 777, § 44; 2 *Whit. Pr. pp.* 22, 26, 27). In the case of *Elizabeth Vernon, by Guardian* agt. *William C. Butler, Gen. T.* 1851, the question was, after judgment as of nonsuit, of the attorney's liability for costs. That case can be clearly distinguished from the present.

1. The question arose after judgment.

2. It might be that the court would allow a construction in favor of an attorney, where the party had other remedies to which he might have resorted; *e. g.*, either to compel the guardian in the first instance to file security for costs, or to proceed against him afterwards by attachment. It does not appear in the case discussed, that any action whatever had been had to recover costs of the guardian, or any demand of him therefor been made.

III. There is no reason upon principle why the construction insisted on by the plaintiff's counsel should be favored (*Code,* § 316).

(*a.*) It seems a singular way of showing favor to a guardian, as the counsel claims is the intention of the Code, to provide that he shall not be compelled to file security for costs, and yet that he shall be liable for them by attachment.

(*b.*) If it is claimed that infants should not be compelled to file such security any more than adults, the answer is that the requirement is based on public policy. 1st. It is

not for the public good that irresponsible persons shall be allowed to prosecute fictitious claims.    Infant plaintiffs are always presumed by the law, and in fact often are, utterly incompetent to judge of the merits of the case, or, indeed, whether there is any case ; and should such a construction prevail, they would be likely to be used by designing men as a safe and ready legal speculation.    There would be no pecuniary risk, and just such characters as would have nothing that could be reached by attachment, would laugh at the formal process of attachment against their person, in view of the gains that might arise.    Law never favors a construction that encourages litigation.    Such a construction makes the remedy provided by the Code, in form more rigid than that provided by the statute, but in reality less effectual and equitable, and by so much encourages litigation, and subjects the law to be used for a mere speculation.    2d. It is for the benefit of infant plaintiffs that their guardians shall be persons of character, who have the confidence of community to a sufficient degree to be able to get sureties, and the fact that sureties are procured, will tend to make guardians more vigilant and faithful, and a greater number will be interested in the infant's case, and in seeing that his just rights are secured.

(c.) It is for the interest of the public that a purely civil remedy should be preferred to one that involves the liberty of the subject, and law will never favor a construction that confines a party in a civil action to a remedy that endangers that liberty.

(d.) This statute renders the guardian compellable to file security for costs.    The Code renders him liable by attachment for them,—a fortiori, the provisions of the statute will be enforced.

(e.) There is no hardship in this.    On the contrary, it relieves the guardian from the harshness of the provision of the Code.    The statute will be under the sound discre-

tion of the court, so that no hardship can possibly arise. That is not the case with the provision of the Code.

(*f.*) The true construction is to consider the Code as auxiliary to the statute.

(*g.*) It goes far to sustain the position, that the statute still remains in full force, that in addition to the fact that not only is it nowhere expressly repealed, but that during a period of seventeen years, it has not been held in a single reported case, or in any instance so far as known, to have been so by implication. The truth doubtless is, that the question having fairly arisen as to non-residents, and the broad position having been taken that the Code had not affected that title of the Revised Statutes, the whole subject was considered as settled in favor of the entire title of the statute.

J. C. COCHRANE, *for responaent, plaintiff.*

I. This question relates to the subject of practice, not pleading. The object of pleadings is to present to the court facts outside of the pending case. Never to bring up as a subject of controversy or trial, proceedings in the same suit.

II. The appointment of a guardian for an infant plaintiff or defendant, to appear in the action, is a proceeding in practice not to be pleaded in the complaint or answer, any more than the service of a summons or the issuing of an attachment.

III. Hence, in an action in which a guardian was appointed for the plaintiff, an answer that the plaintiff was an adult and not an infant, and that he appeared by guardian, would be bad, as merely pleading a proceeding in the same suit, and a matter of practice in regard to which a motion might be made, but for which an action could not be brought or defended. It could not be a defence.

IV. This, as a matter of practice, was regulated by 2

*Revised Statutes (Edmond's ed. p.* 465). " Before any process shall be issued in the name of an infant who is sole plaintiff, a competent person shall be appointed as next friend of such infant." By the Code (§ 115) all infants, plaintiffs or defendants, suing alone, or with others, must appear by guardian.

V. These two provisions are entirely inconsistent, and, therefore, by the provisions of the Revised Statutes, are expressly abolished by sections 468 and 469 of the Code.

VI. The statute (2 *R. S. Edmond's ed.* 644) requiring infants to file security, only applies to the case where a next friend was required and necessary (4 *How.* 93). The statute proceeding for a next friend having been abolished, the statute requiring security in case of a next friend, can have no further application.

VII. The statute has no application to a guardian under the Code, unless guardian and next friend mean the same thing. If they do, then a next friend may still be appointed. Can this be done? (*Hoftailing* agt. *Teal,* 11 *How.* 188.)

VIII. A next friend was required in a single case, was appointed in a particular way, by special officers named. The guardian is required in other cases, is appointed in a different manner, and has different authority.

IX. The words " next friend," as well as "guardian," had a fixed, ancient and technical meaning. When such a word is used in a statute, the legislature are understood to employ it in that sense. (*Merchants' Bank* agt. *Cook,* 4 *Pick.* 405 ; *The State* agt. *Smith,* 5 *Humph.* 394 ; *see page* 393, *same book.*) Guardian and next friend were never synonymous terms. The *prochein ami* is one who without being appointed guardian, sues for another (*Bouvier's Law Dic. title* " *Prochein* ").

X. That the legislature did not consider that the statute applicable to next friends, applied to guardians, is manifest. By the Code of 1848, guardians were not made liable

for costs. In 1849, by section 316, the omission was supplied. As there was a statute making the next friend liable (2 *R. S.* 465, § 2), this would have been unnecessary if next friend and guardian were considered the same thing.

XI. If security can be required in this case, the attorney for the plaintiff is liable for costs if it is not given. (2 *R. S.* 645, § 7; 4 *How.* 93.) This section had no application to equity cases (*Sigourney* agt. *Waddle*, 9 *Paige*, 381) They were provided for by rule 16 of the court of chancery. If the statute applies, it must either be extended to all cases, or else the liability of the attorney depends on the nature of the action.

XII. At the March term of this court, 1851, in the case of *Catharine Vernon, by her Guardian,* agt. *William C. Butler,* this question was argued and determined, and should be considered as at rest.

By the court, E. DARWIN SMITH, J. In the Revised Statutes (*chap.* 8; *title* 2, *part* 3, *vol.* 2, 445), it was provided as follows:

"§ 1. When an infant shall have any right of action, &c., he shall be entitled to maintain a suit thereon.

"§ 2. Before any process shall be issued in the name of an infant who is sole plaintiff in any suit, a competent and responsible person shall be appointed to appear as *next friend* for such infant, who shall be responsible for the costs thereof."

In title 3, chapter 10, of said Revised Statutes, page 620, it is provided, among other cases, that when a suit shall be commenced in any court in the name of any infant, whose *next friend* has not given security for costs, the defendant may require such plaintiff to file security for costs, and also, that when security for costs may be required by such title, the plaintiff's attorney instituting such suit shall be liable for costs to the amount of $100. Section 8, of the said title 2, page 446, also provided that

after the issue of process against any infant defendant, by which he shall be arrested, the suit shall not be any further prosecuted until a *guardian for such infant* be appointed.

It will thus be seen that the Revised Statutes provide that an infant plaintiff sue by a *next friend*, and that an infant defendant defend by *guardian*, and such was the practice in this state before the Code, under this statute, and such was the previous rule at common law. In the Code (§ 115), it was provided that " when an infant was a party he must appear by guardian ," and section 316 is as follows : " When costs are adjudged against an infant plaintiff, the guardian by whom he appeared in the action shall be responsible therefor, and payment thereof may be enforced by attachment."

The Code thus introduced a new practice. It dispensed with the *next friend* of the common law and of the Revised Statutes, and substituted in his place a *guardian* for the infant, by whom the infant is both to sue when he is plaintiff, and by whom he is to appear when sued, as defendant. The provision of the Revised Statutes requiring the *next friend* of an infant plaintiff to give security for costs, does not apply to the guardian of the Code. The guardian is liable for costs, the payment of which, as above stated, may be enforced by attachment. The legislature made a distinction between the *next friend* and the *guardian* of an infant, in the Revised Statutes, and also in the Code, for in section 114, in the amendment of 1857, it provided that a married woman (who in the amendment of 1851, and previously at common law, was required in most cases to sue by a *next friend*) " need in no case prosecute or defend by *guardian* or *next friend*," and there was ever a distinction between the name and office of *next friend—prochein ami* —and *guardian*, at common law. I cannot see, therefore, how we can apply the provision of the Revised Statutes, requiring the next friend of an infant plaintiff to give security for costs, to the guardian of the Code. It is not

necessary to say that this provision is repealed by implication. It does not in terms apply to the guardian. The legislature has not so applied it, and we are simply to decide that there is no express provision in the statute requiring a guardian, as such, and who sues for an infant plaintiff by that name—a name well known and recognized at law—to give security for costs. This question was so decided in this court at an early period since the Code (*March Term*, 1851), in the suit of *Catharine Vernon, by her guardian* agt. *William C. Butler*. In this case costs being awarded against the plaintiff, an order was made at special term that the attorney pay the same; no security for costs having been filed by the guardian. This order was reversed at the general term, on the ground, as we understand, and as we must hold on the case, that the guardian was not bound under the Code to give security for costs, and that the provision of the Revised Statutes requiring the next friend of an infant to give security for costs, did not apply to such guardians.

I think the legislature intended to introduce a new rule and a new practice on the subject, and that the plaintiff was not bound to give security for costs, and that the order of the judge below should, therefore, be affirmed.

JOHNSON, J., concurred.   J. C. SMITH, dissented.

JAMES C. SMITH, J., *dissenting*. On the 9th of February last, the defendant presented to Justice E. D. SMITH, at chambers, an affidavit, stating among other things that the plaintiff is an infant, and that his guardian is irresponsible and costs cannot be collected of him; and thereupon the justice granted an alternative order requiring the plaintiff to file security for costs. On the 13th of February, both parties having appeared before the justice, and been heard by him, he made an order vacating the order granted on the 9th, and from the order last made, the defendant has appealed.

The Revised Statutes provide (2 *R. S.* 620, § 1, *sub.* 5),

that when a suit shall be commenced in the name of an infant whose next friend has not given security for costs, the defendant may require such plaintiff to file security for costs. The only question presented by the appeal is, whether the provision is applicable to the case of an infant suing by *guardian*, as provided by the Code (§§ 115, 116). The plaintiff insists that as before the Code the provision referred to applied only to cases where a *next friend* was required to be appointed (2 *R. S.* 446, § 2 ; 4 *How.* 93), it is abrogated by the Code, which expressly provides that when an infant is a party he shall appear by guardian (*Code*, §§ 468, 469). I have attentively considered the argument submitted by the plaintiff's counsel, but it has failed to convince me that the legislature in directing that infants shall in all cases appear by guardian, intended thereby to relieve a sole infant plaintiff from the requirement of the statute to file security for costs.

Obviously one object of the Code, if not the only one, was to dispense with the terms "next friend" and "*prochein ami*," and to apply a uniform term of designation to the person by whom an infant may appear in an action, whether such infant is plaintiff or defendant, sole party or joined with others. But notwithstanding the change of name, the duties and responsibilities of such person, towards the infant at least, remain the same as formerly ; he is to the infant plaintiff precisely what a "next friend" was before the Code. Not only is this true of his liabilities at common law, but also of those imposed by statute. The Revised Statutes provide that in certain cases the next friend shall, if required by the officer to whom application is made for his appointment, execute a bond to the infant, conditioned to account to him for all moneys recovered in the suit (2 *R. S.* 446, §§ 5, 6, 7). I apprehend this provision is still in force, and applies to the guardian of an infant plaintiff, appointed as provided by the Code. Yet if the position of the plaintiff's counsel is correct, this

provision, which was intended solely for the benefit of the infant, is also repealed by the change of name. I do not think the legislature so intended.

If then, the legislature by substituting the term guardian for that of next friend, have not discarded any former rule designed for the protection of the infant, what reason is there for supposing that they intended to abrogate the wholesome statute requiring security for the costs of the defendant? They have not done so in express terms; there was no necessity of resorting to doubtful language, and a repeal by implication is not to be favored. The plaintiff's counsel suggests that the words " guardian," and " next friend " or " *prochein ami*," have an ancient, fixed and technical meaning, and were never synonymous, and the legislature must be understood to have employed them in their technical sense. In fact, however, they have not a well defined, distinct and technical meaning. Originally at common law, the *guardian* of the infant was the person to prosecute as well as defend suits in his behalf. But as guardians were sometimes themselves the very persons who disturbed and injured the infants in their rights, the legislature at length interposed, and by statute (1 *West. chap.* 48) enacted " that if an infant be *eloined* or disturbed by his guardian or *feofee*, or any other, whereby he cannot prosecute his assize, *any one of his nearest friends who pleases*, may sue for him." Afterwards by statute, *West.* 2, *chap.* 15, a *general* privilege was allowed in all cases for minors to sue by their next friend, who was to *be admitted* for that purpose (2 *Sélllon's Pr.* 64). In the books, the names of *guardian* and *prochein ami*, are oftentimes taken the one for the other, because it frequently happens that they used to be one and the same, as the *guardian* in *socage* was also *prochein ami*, &c (*Id*). After the statute of West. 2, it seems to have been the rule that an infant shall sue by *prochein ami*, and defend by *guardian*, but even then the distinction was one of terms merely, for as well the *guardian* as the

*prochein ami,* could only *be admitted* on proper petition and application to the court, and *any person* who as friend to the infant, was willing to prosecute or defend for him, was competent to be so admitted (*Id*). It is difficult, therefore, to discover any substantial difference in the meaning of the terms which furnishes a reason for requiring an infant plaintiff to give security for the defendant's costs when he appears by next friend, and relieving him from that requirement when he appears by guardian.

The plaintiff's counsel draws another argument from the fact that the Code of 1848 did not make guardians liable for costs, and the legislature supplied the omission in 1849, by section 316 of the Code. It is argued that as there was then a statute in force making the next friend liable (2 *R. S.* 446, § 2), the legislation of 1849 would have been unnecessary, if next friend and guardian were considered the same thing. But by a similar argument, the provision of the Revised Statutes last above referred to, might be shown to have been unnecessary, since at common law the next friend was liable for costs. (*Willes' R.* 190 ; 11 *Wend.* 164.) The answer is that the statute was declaratory merely (*Reviser's Notes, 5. R. S. Edm. ed.* 479), and so is section 316 of the Code, not only in making the person by whom an infant plaintiff sues liable for costs, but also in subjecting him to attachment. (2 *Sel. Pr.* 67 ; *Tidd's Pr.* 72.)

It is also urged by the plaintiff's counsel, that if security can be required in this case, the attorney is liable for costs if it is not given, under section 7 (2 *R. S.* 620), and as that section did not apply to suits in the court of chancery (9 *Paige,* 381), this court must either reverse the rule of chancery, and extend the statute to equitable as well as legal actions, or else the liability of the attorney must depend on the nature of the suit. It is unnecessary now to consider the question whether under our present statutes the liability of the attorney exists in all cases, or only in

actions of a legal nature, as that question is not before us, but it is enough to say that no practical difficulty, and no injustice would result from holding that it exists in all legal actions at least, and hence the argument does not appear to be of much weight in the present case.

I am of opinion that the order appealed from should be reversed.